UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ALLISON VANDAM,

    Plaintiff,

-vs-

COMMUNITY WEST CREDIT UNION,
a domestic corporation,

    Defendant.

Case No. 22-cv-

Hon.

---

Jennifer Lossia McManus (P65976)
Ryan O. Rosenberg (P84530)
Fagan McManus, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
rrosenberg@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.

NOW COMES Plaintiff, ALLISON VANDAM, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendant, states as follows:

### JURSIDCTIONAL ALLEGATIONS

1.    Plaintiff, Allison VanDam (hereinafter referred to as "Plaintiff"), is an individual residing in the City of Shelbyville, County of Allegan, State of Michigan.

2.    Defendant, Community West Credit Union, (hereinafter referred to as "Defendant") is a for-profit corporation with its principal place of business in Kentwood, Michigan, and at all times pertinent hereto operated throughout western Michigan.

1

3. At all times pertinent hereto, Plaintiff primarily worked out of Defendant's Kentwood, Michigan location.

4. At all times pertinent hereto, Defendant employed at least 50 employees within a 75 mile radius of Plaintiff's worksite.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental).

6. The amount in controversy is in excess of $75,000.00, exclusive of all interest, costs, attorney fees and punitive damages.

## GENERAL ALLEGATIONS

7. Plaintiff began her employment with Rockford Community Credit Union on March 2012.

8. Rockford Community Credit Union merged with Community West Credit Union in January 2015, and thereafter, Plaintiff became an employee of Defendant.

9. Plaintiff was last employed as a loss recovery manager.

10. In order to perform her job duties, Plaintiff was required to work with a creditor attorney, or outside counsel, retained by Defendant.

11. Plaintiff performed her job well and was not subjected to progressive disciplined during her over nine years of employment with Defendant.

12. In mid to late 2021, Plaintiff began to complain about and to engage in sustained objections to the fraudulent billing practices of Defendant's outside counsel.

13. In addition, Plaintiff began to complain about and to engage in sustained objections to the incompetent and unethical work performed by one of Defendant's outside counsel ("OC").

2

14. Plaintiff believed that the OC's conduct were not only illegal and constitute fraudulent billing practices, but that they were also a violation of the Michigan Rules of Professional Conduct.

15. Plaintiff's complaints and objections were made to Defendant's CFO and to its Vice President of Legal and Loss Prevention.

16. For example, Plaintiff complained that the OC often billed Defendant multiple times for the same work and improperly billed for an exorbitant amount of time to process documents.

17. As further example, Plaintiff complained that at one point the OC filed – and billed for - a late proof of claim regarding an open bankruptcy matter that was rejected by the Bankruptcy Court and had not been authorized by Defendant.

18. Plaintiff complained that the OC did a judgment lien on member who rented, rather than owned property.  Accordingly, the judgment lien was worthless and could not be executed upon.  The judgment lien was not authorized by Defendant.  However, the OC still billed Defendant for the improper judgment lien.

19. In addition, the OC partook in a discovery hearing regarding the above-mentioned member without authorization from the Defendant, yet still billed the Defendant for the hearing.

20. In addition, even though the discovery hearing was not authorized by the Defendant, the OC initiated multiple subpoenas that he sent out for service by a court officer, and for which he billed Defendants, despite the fact that the member was in fact incarcerated and could not be served.

21. Plaintiff also complained that there were multiple months where the OC

fraudulently included corporate billings on his collections invoices that he sent to Defendant for payment.

22. In August 2021, Plaintiff told Defendant that she refused to continue to work with the OC because of his continued, sustained, illegal, unethical and incompetent work, and because she refused to engage in and/or support such illegal, unethical and incompetent work, because they were illegal and also a violation of the Michigan Rules of Professional Conduct.

23. Initially, Defendant's VP of Legal and Loss Prevention emailed the OC dismissing him as the OC and gave approval to Plaintiff to move cases to another creditor attorney.

24. However, the dismissal was short-lived, as Defendant's CEO decided to continue to retain the OC.

25. Following her refusal to work with the OC, Defendant's CEO told the VP of legal and loss prevention that he was "disappointed" with her.

26. Plaintiff was told that Defendant was going to continue to work with the OC, despite his illegal and unethical conduct, but that another employee other than Plaintiff could handle direct communications with the OC while Plaintiff continued to work in loss recovery.

27. Plaintiff responded that such arrangement was not acceptable, because even if she did not communicate directly with the OC, she would still be working on cases that he handled, and would therefore still be a participant in his illegal and unethical conduct.

28. Plaintiff continued to have conversations with Defendant's CEO about her

refusal to work with the OC just a week before her termination.

29. In 2015, Plaintiff was diagnosed with chronic osteomyelitis in her right ankle/foot.

30. Plaintiff underwent multiple surgeries in 2015, 2016, 2017, 2018, 2019 and 2020 related to her chronic osteomyelitis.

31. Ultimately, in June 2021, Plaintiff's physicians determined that she would need to have a below the knee right leg amputation.

32. The surgery was scheduled to take place on November 9, 2021.

33. On July 12, 2021, Plaintiff notified Defendant's executive team of her upcoming surgery.

34. On July 20, 2021, Plaintiff notified Defendant's management team of her upcoming surgery.

35. Plaintiff also notified Defendant that following her surgery she would need to take approximately one week off of work to recover and that she would need to work part time as needed during her continued recovery.

36. Such arrangements would have constituted a reasonable accommodation in order for Plaintiff to continue to perform her job duties.

37. Such arrangements also would have constituted leaves pursuant to the Family Medical Leave Act, both continuous and intermittent.

38. On October 4, 2021, Plaintiff was notified by letter sent via email of her termination. In addition, there was a phone conversation at 1pm that led to the emailing of the letter.

39. The termination letter was dated October 1, 2021.

40. In addition, due to Defendant's ongoing insistence that the OC continue to work in its loss recovery department, thereby requiring Plaintiff to continue to participate in and/or cooperate in his illegal and unethical conduct, Plaintiff's employment was constructively discharged, as neither she nor any reasonably competent individual could continue to work under such circumstances.

41. In December 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and failure to accommodate under the Americans With Disabilities Act of 1990, as amended ("ADA").

42. Plaintiff's Charge of Discrimination remains pending with the EEOC.

43. Plaintiff anticipates amending this lawsuit to include a Count under the Americans With Disabilities Act upon receipt of a Notice of Right to Sue from the EEOC.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

44. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

45. Upon information and belief, Defendant is an employer within the meaning of the Family Medical Leave Act ("FMLA"), as it employs greater than 50 employees within a 75 miles radius of Plaintiff's worksite.

46. Plaintiff requested four medical leaves for treatment of her chronic osteomyelitis.

47. Plaintiff was an eligible employee without the meaning of the FMLA as:

    a. Plaintiff was employed by Defendant for a time period greater than 12 months;

    b. During the previous 12 months, Plaintiff worked greater than 1250 hours.

6

48. Pursuant to the FMLA, Plaintiff was entitled to 12 work weeks of leave for a serious health condition in a 12 month period.

49. Defendant interfered with and/or retaliated against Plaintiff's right to take FMLA leave by:

   a. Terminating her employment close to a month before she was scheduled to have a partial leg amputation and take subsequent time off of work for recovery from the upcoming surgery;

   b. Constructively discharging Plaintiff's employment;

   c. Other acts of interference and/or retaliation to be discovered.

50. Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of whether such conduct was prohibited.

51. As a direct and proximate result of the FMLA violations, Plaintiff has suffered and in the future will suffer damages including, but not limited to lost wages, employee benefits, and other compensation, past and future.

52. Pursuant to the FMLA, Plaintiff is entitled to:

   a. All wages, salary, employee benefits, or other compensation denied or lost by reason of such violation, past and future;

   b. Interest on the lost compensation;

   c. Liquidated damages;

   d. Other damages/remedies available under the law.

WHEREFORE, Plaintiff prays for Judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff

also seeks equitable relief including back pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF MICHIGAN'S PWDCRA

53. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

54. At all times relevant herein, Plaintiff was an "employee" and Defendant was an "employer" under the Michigan Persons with Disabilities Civil Rights Act ("PDWCRA"), MCL 37.1101 *et seq*.

55. At all times relevant hereto, Plaintiff had a disability, was regarded by Defendant as having a disability, and/or had a history of a disability as defined under the PWDCRA.

56. Defendant had a duty under the PWDCRA, not to discharge or otherwise discriminate against Plaintiff in her employment on the basis of her disability, perceived disability, and/or history of disability.

57. Defendant also had a duty under the PWDCRA to provide Plaintiff with reasonable accommodations necessary for her to perform her job.

58. Plaintiff's disability did not affect her ability to perform the essential functions of her job, with reasonable accommodation(s), such as working from home on an as-needed basis.

59. Defendant violated Plaintiff's rights under the PWDCRA, as Plaintiff's disability, perceived disability, and/or history of disability was a motive or reason, that made a difference in Defendant's conduct toward Plaintiff, including, but not limited to, the following:

    a.    Terminating Plaintiff's employment;

    b.    Constructively discharging Plaintiff's employment;

    c.    Denying Plaintiff's request for a reasonable accommodation like working from home, instead terminating her employment before she could do so;

    d.    Other acts of discrimination to be determined through discovery.

60. As a result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a.    Loss of wages and other compensation, both in the past and in the future;

    b.    Loss of the value of benefits, both in the past and in the future;

    c.    Loss of promotional opportunities;

    d.    Loss of earning capacity;

    e.    Extreme embarrassment, humiliation, emotional distress, mental anguish, disappointment, outrage and indignity;

    f.    Exemplary damages;

    g.    Attorney fees;

    h.    Other injuries and damages that become known through the discovery process.

61. Plaintiff also seeks equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, court costs,

9

punitive damages, and attorney fees.  Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

### COUNT III
### VIOLATION OF PUBLIC POLICY

62. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

63. It is unlawful and in violation of the public policy of the State of Michigan for an employer to discharge or take other adverse action against an employee who refuses to violate the law in the course of her employment, objects to unlawful practices, or acts in accordance with statutory rights or duties.

64. Upon information and belief, Defendant continued to employ an Outside Counsel to work with its loss recovery department, despite Plaintiff's constant notification to Defendant that its Outside Counsel engaged in illegal, unethical and incompetent practices.

65. Plaintiff believed that the Outside Counsel's actions were illegal because they constituted fraud to Defendant and a violation of the Michigan Rules of Professional Conduct.

66. Plaintiff refused to engage in such illegal and unethical conduct, openly voiced her refusal to do so and explained that as long as the Outside Counsel continued to work with Defendant's loss recovery department, then any work that she did for that department would constitute a continuation of and cooperation with his illegal and unethical conduct.

67. Plaintiff also objected to Defendant's continuation of allowing such practices.

68. Plaintiff made it clear to Defendant that she refused to violate the law, and refused to in any way cooperate with, be complicit in, participate in, or assist the OC in his continued violation of the law, including engaging in fraud and violating the Michigan Rules of Professional Conduct.

69. Defendant violated the public policy of the State of Michigan by retaliating against Plaintiff for refusing to engage in illegal and unethical conduct and for objecting to illegal and unethical conduct, and took adverse action against her for engaging in such protected activities as follows:

    a. Terminating Plaintiff's employment;

    b. Constructively discharging Plaintiff's employment;

    c. Other acts of retaliation to be determined through discovery.

70. As a direct and proximate result of Defendant's retaliatory conduct in violation of the public policy of the State of Michigan, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a. Loss of wages and other forms of compensation, both in the past and in the future;

    b. Loss of the value of benefits, both in the past and in the future;

    c. Loss of promotional opportunities;

    d. Loss of earning capacity;

    e. Extreme embarrassment, humiliation, mental anguish, disappointment, outrage and indignity;

    f. Exemplary damages;

    g. Other injuries and damages that become known through the discovery process.

WHEREFORE, Plaintiff prays for Judgment against Defendant, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees.

                                                Respectfully submitted,

                                                FAGAN MCMANUS, P.C.

                                                By: /s/ *Jennifer L. McManus*
                                                       Jennifer L. McManus  (P65976)
                                                       Attorney for Plaintiff
                                                       25892 Woodward Avenue
                                                       Royal Oak, MI  48067-0910
                                                       (248) 542-6300
Dated:  February 4, 2022                         jmcmanus@faganlawpc.com


## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

                                                Respectfully submitted,

                                                FAGAN MCMANUS, P.C.

                                                By: /s/ *Jennifer L. McManus*
                                                       Jennifer L. McManus  (P65976)
                                                       Attorney for Plaintiff
                                                       25892 Woodward Avenue
                                                       Royal Oak, MI  48067-0910
                                                       (248) 542-6300
Dated:  February 4, 2022                         jmcmanus@faganlawpc.com